UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JESSE S.[1] , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:20-CV-366-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Jesse S. ("Mr. S") seeks judicial review of the Social Security Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

**OVERVIEW OF THE CASE**

Mr. S applied for DIB on November 8, 2017. In his application, he alleged a disability onset date of September 23, 2017. Mr. S's application was denied initially on June 11, 2018, and upon reconsideration on December 5, 2018. Following a hearing on December 17, 2019, the Administrative Law Judge ("ALJ") issued a decision on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

February 3, 2020, which affirmed the Social Security Administration's denial of benefits. The ALJ found that Mr. S suffers from the severe impairments of degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; status post concussion; headaches; obesity; major depressive disorder; anxiety; and post-traumatic stress disorder ("PTSD"). The ALJ found that none of Mr. S's severe impairments, nor any combination of his impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Mr. S has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain additional limitations. Mr. S has past relevant work as a corrections officer and a rural mail carrier. In view of Mr. S's RFC, the ALJ found that Mr. S is unable to perform past relevant work. However, the ALJ concluded, based on the testimony of the vocational expert, that Mr. S has the ability to meet the requirements for employment as a small parts assembler, mail sorter, and inspector hand packager. Based upon these findings, the ALJ denied Mr. S's claim for DIB.

**I.    DISABILITY STANDARD**

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial

gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## II.   STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ

3

has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

### III. ANALYSIS

Mr. S argues that the ALJ erred by failing to properly account for his deficiencies in concentrating, persisting, or maintaining pace.

Before crafting a claimant's RFC, an ALJ is required to determine whether the claimant's medical impairments are "severe" at Step Two of the disability analysis. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). An impairment is not severe if "medical evidence stablishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). As noted above, the ALJ determined that Mr. S. had the severe impairments of degenerative disc disease of the cervical and lumbar spine, status post concussion, headaches, obesity, major depressive disorder, anxiety, and PTSD.

4

If an ALJ determines that any of a claimant's alleged impairments are severe, the ALJ proceeds to the Step Three Listing analysis to determine if the claimant is presumptively disabled based on the severity of his impairments. 20 C.F.R. § 404.1520(a)(f)(iii). As part of her Step Three listing analysis, the ALJ concluded that Mr. S. has moderate limitations in concentrating, persisting, or maintaining pace. [DE 16 at 28]. In support, the ALJ noted that, while Mr. S. reportedly has a short attention span, difficulty concentrating, and trouble completing tasks, he remains capable of taking care of his children. [*Id.*]. The ALJ also found that mental health treatment records report good intellect and concentration. [*Id.*].

Subsequently, the ALJ defined Mr. S.'s FRC as being able to perform light work with the following limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [he] can stand, walk, or sit for six hours (each) out of an eight-hour workday. Can frequently climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to vibration, and not even moderate exposure to unprotected heights, and moving machinery. With work that can be learned in 30 days, or less, with simple routine tasks; routine workplace changes; simple work-related decisions; is able to remain on task in two-hour increments; with occasional interaction with coworkers, supervisors, and no interactions with the general public.

[*Id.* at 29]. The ALJ restated, verbatim, the limitations from the RFC in the hypothetical to the VE at the hearing. [*Id.* at 70-75].

A claimant's RFC is the most activity in which he can engage in a work setting despite the physical and mental limitations that arise from her impairments and related symptoms. 20 C.F.R. §404.1545(a)(1); *see also* SSR 96-8p; *Villano v. Astrue,* 556 F.3d 558,

561-62 (7th Cir. 2009). Mr. S. argues that the RFC, and the identical hypothetical to the VE, do not include any limitations related to his ability to concentrate, persist, or maintain pace.

An ALJ must evaluate all relevant evidence when determining a claimant's RFC, including any deficiencies in concentration, persistence, or maintaining pace. 20 C.F.R. § 404.1545(a); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). A claimant's mental ability is relevant to the RFC analysis, because "[a] limited ability to carry out certain mental activities … may reduce your ability to do past work and other work." 20 C.F.R. § 404.1545(c).

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). While there is no "per se requirement" for an ALJ to use the specific terminology of "concentration, persistence, and pace" in a hypothetical, a court "will not assume that the VE is apprised of such limitations…." *Id.* When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). In most cases, an ALJ "should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620-21.

6

The Seventh Circuit has held that limiting a claimant to "simple, routine tasks that do not require constant interactions with coworkers or the general public" may be insufficient to properly account for moderate limitations in concentrating, persisting, and maintaining pace. *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009). In so doing, the Seventh Circuit has expressed concern that such boilerplate language will be used as a "one-size-fits-all solution without delving into an individual assessment of the claimant's specific symptoms." *Bruno v. Saul*, 817 F3d.Appx. 238, 242 (7th Cir. 2020) (citing *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020)). In order to avoid such one-size-fits-all solutions, the Seventh Circuit has declined to "provide a glossary of adjectives for use in RFC determinations," and instead requires only that "the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin*, 950 F.3d at 374 (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).

Here, the ALJ's RFC reflects her findings that Mr. S. can perform work that can be learned in 30 days or less, "with simple routines tasks; routine workplace changes; simple work-related decisions; is able to remain on tasks in two-hour increments; with occasional interaction with coworkers, supervisors, and no interactions with the general public." [DE 16 at 29]. Mr. S. argues that using this often criticized boilerplate language in the RFC is, in itself, reversible error. However, Mr. S. does not provide any evidence from the medical record to support his claim, nor does he offer any further limitations that he asserts would account for his limitations in concentrating, persisting, and maintaining pace.

7

To support the RFC limitations as crafted, the ALJ noted Mr. S.'s testimony that he stopped attending talk therapy in 2018 or 2019, and that he has had no other treatment for mental health issues since that time. [DE 16 at 30]. The ALJ also noted that Mr. S.'s doctor questioned whether he was underperforming on cognitive testing either due to an honest belief his cognitive functioning is worse than it actually is or due to being hypersensitized to his symptoms, resulting in exaggerated debility. [*Id.* at 31]. The ALJ also noted that in June 2018, Mr. S.'s physician advised him to try either a part-time job or volunteer work outside of the house, which the ALJ found "suggests the claimant maintained functional capacity beyond his reports." [*Id.*].

In discussing a December 2017 neuropsychological evaluation, the ALJ noted that Mr. S. demonstrated poor effort on memory testing, but that his visual learning and memory fell within normal limits. [*Id.* at 33]. The ALJ also cited the physician's statement that the test results "may reflect poor effort versus purposeful magnification of difficulties in the context of an individual who appears to be experiencing severe depressions." [*Id.*]. Yet the ALJ also acknowledged that the physician diagnosed Mr. S. with major depressive disorder, with rule out diagnoses of malingering and somatoform disorder. [*Id.*]. The ALJ also referenced Mr. S.'s mental health treatment between April 2018 and August 2019 during which he was repeatedly documented with good attention and concentration. [DE 16 at 34]. By relying on multiple treatment notes and opinions in determining Mr. S.'s RFC limitations, the ALJ supported her RFC determination with substantial evidence.

Mr. S.'s reliance on *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) in support of his argument that the RFC limitations to "simple, routine, repetitive tasks with few workplace changes" did not adequately account for his moderate limitations in concentrating, persisting, or maintaining pace is misplaced. The facts in *Crump* are vastly different from the facts in Mr. S.'s case. The Seventh Circuit in *Crump* found that the medical evidence "plainly shows" that the claimant suffered from limitations in the ability to concentrate, persist, or maintain pace, and the claimant "testified consistently with the medical treatment notes about how her bipolar disorder impairs her ability to concentrate well enough to work for a sustained period." *Id.* Furthermore, the ALJ in *Crump* ignored VE testimony regarding limitations consistent with Crump's testimony. *Id.* Mr. S. argues no similar issues here. Mr. S. can point to no evidence that supports his claims of impaired concentration requiring more restricted limitations than the ALJ provided, nor does he offer any further limitations that should have been included. As such, *Crump* is not analogous.

Moreover, the Seventh Circuit has repeatedly held that in some cases, "an ALJ may reasonably rely upon the opinion of a medical expert who translates [concentration, persistence, or pace] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); see also *Morrison v. Saul*, 806 Fed. App'x 469, 474 (7th Cir. 2020); *Baldwin v. Berryhill*, 746 Fed. App'x. 580, 584 (7th Cir. 2018). Here, the ALJ relied on the state agency psychological consultant opinions, who opined that Mr. S. can "understand, remember, and carry-out simple tasks, relate on at least a superficial and an ongoing basis with co-workers and supervisors, attend to task for

9

sufficient periods of time to complete tasks, and manage the stresses involved with simple work." [DE 16 at 35]. While finding that Mr. S. has moderate limitations in concentrating, persisting, or maintaining pace, the state agency psychologists also found that Mr. S.'s daily activities "appear primarily limited due to physical conditions." [*Id.* at 92, 110-11]. In discussing Mr. S.'s limitations in concentrating, persisting, and maintaining pace, the state agency psychologists opined that Mr. S. is moderately limited in his ability to carry out detailed instructions, but he is not significantly limited in the ability to carry out very short and simple instructions or in his ability to maintain attention and concentration for extended periods. [*Id.* at 96, 109]. They also opined that Mr. S. is not significantly limited in his ability to perform activities within a schedule and maintain regular attendance, and he is not significantly limited in his ability to sustain an ordinary routine without supervision or in is ability to work in coordination with or in proximity to others without being distracted by them. [*Id.*]. Finally, the state agency psychologists opined that Mr. S. is not significantly limited in his ability to make simple work-related decisions or in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." [*Id.*].

In the narrative portion of the opinions, the state agency psychologists specifically found that although Mr. S.'s attention and concentration are moderately impacted, his attention and concentration "appear reasonable for simple tasks." [*Id.* at 96-97, 109]. The state agency psychologists opined that, based on the evidence available,

10

Mr. S. can understand, remember, and carry-out simple tasks; can relate on at least a superficial and an ongoing basis with co-workers and supervisors; and he can attend to task for sufficient periods of time to complete tasks. [*Id.*]. They also opined that Mr. S. can manage the stresses involved with simple work. [*Id.*]. Despite finding these opinions persuasive, noting "mostly normal mental status examinations," the ALJ did provide further limitations regarding interacting with others to address Mr. S.'s testimony regarding struggles with crowds, going out in public, and interacting with others. [*Id.*]. Thus, the ALJ properly relied on both the checklist and the narrative opinions from the state agency psychologists in formulating Mr. S.'s RFC, including his limitations in concentrating, persisting, and maintaining pace.

Finally, when a claimant fails to provide what further limitations the ALJ should have included in an allegedly faulty RFC, any potential errors in accounting for concentration, persistence, or pace may be harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (affirming the ALJ's concentration, persistence, or pace limitations where the claimant "cites no evidence that those deficits keep him from performing simple, routine, and repetitive tasks"); *Kuykendoll v. Saul*, 801 Fed. App'x 433, 438 (7th Cir. 2020) ("Notably, Kuykendoll posits no relevant limitations in concentration, persistence, or pace that the ALJ should have included in his RFC assessment."); *Dudley v. Berryhill*, 773 F3d. Appx. 838, 842 (7th Cir. 2019) ("Critically, Dudley did not identify any limitations that the ALJ omitted and should have included in the hypothetical question."). Here, Mr. S. provided no limitations that the ALJ should have included in the RFC, and he does not provide any citations to medical evidence that would require

11

further limitations related to concentration, persistence, or pace. As a result, Mr. S. has not presented convincing evidence that the ALJ's RFC determination, which was based upon medical opinions, should be re-crafted to include additional limitations.

Finally, Mr. S. asserts that the ALJ improperly relied on irrelevant evidence in making the determination he only had moderate limitations in concentrating, persisting, or maintaining pace. First, he argues that the ALJ erred in relying upon notations of "[g]ood intellect and concentration . . . in [his] mental health treatment records." [DE 16 at 28]. Mr. S. contends that concentration for the short duration of a treatment visit in a therapeutic environment does not show that a claimant can concentrate during a workday. However, the ALJ did not solely or inappropriately rely on mental health treatment notes of good and well-sustained attention and concentration. It is nothing more than speculation to argue that good concentration in mental status examinations does not translate to good concentration during a workday. Moreover, Mr. S. points to no legal authority to support the claim that good concentration during mental health treatment cannot be used to determine a claimant's limitations in concentrating, persisting, or maintaining pace. There is no evidence, medical or legal, to support Mr. S.'s claims.

Yet Mr. S. still asserts that he "could not have concentrated for the requisite amount of time required of unskilled work, nor could he have remained on task" without pointing to any evidence in the medical record to support his assertion. [DE 19 at 23]. The ALJ, on the other hand, relied on the narrative of the state agency psychologists, indicating Mr. S. is capable of understanding, remembering, and carrying

out simple tasks, and that he can attend to those tasks for sufficient periods of time to complete them. [DE 16 at 35].

Furthermore, the ALJ's reference to Mr. S.'s ability to help take care of his children does not doom the ALJ's RFC determination as Mr. S. contends. While the ALJ did properly mention that Mr. S. remains able to help take care of children in discussing the paragraph B criteria in her Step 3 analysis, she makes no further mention of his ability to take care of his children in the discussion of his mental impairments and the resulting RFC. Without more, there is no evidence that the ALJ relied on this evidence improperly in determining the limitations in the RFC or that she even considered his ability to take care of his children in determining the RFC limitations. Instead, the ALJ relied on medical opinion evidence and treatment notes in determining Mr. S.'s RFC related to his moderate limitations in concentrating, persisting, and maintaining pace. [*Id.* at 34-35].

Accordingly, the ALJ properly supported the RFC determination with substantial evidence. The ALJ relied on medical opinion evidence and treatment notes in determining the RFC limitations related to Mr. S.'s moderate limitations in concentrating, persisting, and maintaining pace. Mr. S. has provided no evidence that any further limitations were warranted, and he has offered only vague conclusions that he cannot concentrate for the amount of time required of unskilled work.

V. **CONCLUSION**

For the reasons stated above, the ALJ's decision is supported by substantial evidence and is therefore **AFFIRMED**.

**SO ORDERED** this 1st day of July 2022.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
